UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PAUL MOORE,<br><br>Plaintiff,<br><br>v.<br><br>NKIRUKA AKABIKE,<br><br>Defendant. | Case No. 1:20-cv-01089-KES-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 38) |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 38, "MSJ"). For the reasons set forth below, the undersigned finds that no genuine dispute of material fact exists as to whether Defendant acted with deliberate indifference to Plaintiff's serious medical condition. Therefore, the Court recommends that Defendant's MSJ be granted

## I. BACKGROUND

### A. Procedural History

Plaintiff Steven Paul Moore, a state prisoner, is proceeding pro se and *in forma pauperis* on his Complaint filed under 42 U.S.C. § 1983. (Doc. No. 1). On December 13, 2022, this Court issued a screening order for Plaintiff's Complaint. (Doc. No. 13). As discussed in the Court's December 13, 2022 Screening Order, the Complaint stated a cognizable Eighth Amendment

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

1    claim for medical deliberate indifference to Plaintiff's medical needs against Defendant Dr.
2    Nkiruka Ndu, formerly known as Dr. Nkiruka Akabike,[2] but no other claim.  (*See id*. at 4–6).  On
3    December 30, 2022, Plaintiff filed his response to December 13, 2022 Screening Order, stating he
4    wished to voluntarily dismiss Defendant Diaz and his American Disabilities Act ("ADA") and
5    Rehabilitation Act ("RA") claims.  (Doc. No. 14).  In accordance with Plaintiff's response, the
6    Court voluntarily dismissed Defendant Diaz and his ADA and RA claims.  (Doc. No. 15).  On
7    December 10, 2024, Defendant filed a merits-based Motion for Summary Judgment on the
8    remaining claim against her.  (Doc. No. 38).  Plaintiff filed his Objection to Summary Judgment[3]
9    (Doc. No. 41) and Defendant filed a Reply (Doc. No. 42).

**B. Defendant's MSJ**

Supporting her MSJ, Defendant submits: (1) a memorandum of points and authorities (Doc. No. 38); (2) a separate statement of undisputed facts (Doc No. 38-1); (3) the sworn declaration of N. Ndu (Doc. No. 38-2); (4) Exhibits A-G to the declaration of N. Ndu (Doc. No. 38-3); (5) the sworn declaration of D. Gamez (Doc. No. 38-4); (6) Exhibit A to the declaration of D. Gamez (Doc. No. 38-5); (7) the sworn declaration of N. Guerrero (Doc. No. 38-6); (8) Exhibit A to the declaration of N. Guerrero (Doc. No. 38-7); and (9) Defendant's Rand Warning to Plaintiff (Doc. No. 38-8).  Plaintiff's Objection to Summary Judgment includes (1) a response to Defendant's separate statement of undisputed facts and (2) Plaintiff's separate statement of undisputed facts. (Doc. No. 41).

## II. APPLICABLE LAW

**A. Summary Judgment Standard**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

---

[2] Defendant's last name was changed from Akabike to Ndu during her treatment of Plaintiff.  (Doc. No. 38-2 at 2, ¶ 3).

[3] On January 6, 2025, Plaintiff filed an unsigned and undated objection to Defendant's Motion for Summary Judgment.  (Doc. No. 40).  On January 10, 2025, Plaintiff filed a nearly identical pleading that was signed and dated.  (Doc. No. 41).  Although these pleadings are nearly identical, the Court will only consider the January 10, 2025 filing.  *See Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. CV F 11-0845 LJO BAM, 2012 WL 3260418, at *7 (E.D. Cal. Aug. 8, 2012) (refusing to consider unsigned declaration on summary judgment); *Blaine v. Adams*, No. 1:05-CV-00088 DGC, 2009 WL 2824743, at *2 (E.D. Cal. Sept. 1, 2009) (same); *see also Anderson v. Krpan*, No. 1:14-CV-01380 AWI, 2015 WL 402086, at *2 (E.D. Cal. Jan. 29, 2015) ("The Court cannot consider unsigned filings . . .").

order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility

3

determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson.*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc). However, a complaint's conclusory allegations unsupported by specific facts, will not be sufficient to avoid summary judgment. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001). And, where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2).

The undersigned has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission to an argument, document, paper, or objection is not to be construed that the undersigned did not consider the argument, document, paper, or objection. Instead, the undersigned thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of issuing these Findings and Recommendations.

**B. Eighth Amendment Medical Deliberate Indifference**

The Constitution requires prison officials to provide inmates with reasonably adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To hold an official liable for violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective prong and subjective prong. First, the inmate must suffer from a serious medical need (the objective

4

prong); and second the official must be deliberately indifferent to the inmate's serious medical need (the subjective prong). *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). A medical need is "serious" if the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). The "second prong— defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (internal citations omitted). This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner— generally does not amount to deliberate indifference. *See generally Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference."). To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332.

Neither will an "inadvertent failure to provide medical care" sustain a claim. *Estelle*, 429 U.S. at 105. Misdiagnosis alone is not a basis for a claim, *see Wilhelm*, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical

5

indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

## III.  ANALYSIS

### A.  Allegations in Plaintiff's Complaint

Plaintiff, a state prisoner currently confined at the California Substance Abuse Treatment Facility ("SATF"), operated by the California Department of Corrections and Rehabilitation, brings this action under 42 U.S.C. § 1983 against Defendant Dr. Nkiruka Ndu, a medical doctor at the facility. (Doc. No. 1 at 1). Plaintiff asserts that Defendant acted with deliberate indifference to his serious medical needs by denying him (1) orthotics or orthopedic shoes[4] and (2) a light-duty work chrono, in violation of the Eighth Amendment. (*Id*. at 2–4).

Plaintiff alleges he "suffers from severe crippling foot pain, toe pain, ganglionic cysts, onychomycosis, onychocryptosis, paronychia, and edema." (*Id*. at 4). On February 14, 2019, Defendant denied Plaintiff's request for orthotics, a recommendation previously made by specialist Dr. Zorrilla on July 11, 2018, and approved by Dr. Hails, Plaintiff's prior primary care physician. (*Id*. at 3). Dr. Hails had issued a permanent medical chrono for durable medical equipment authorizing orthopedic shoes and insoles. (*Id*.). Despite these prior medical determinations, Defendant denied Plaintiff's request and told him that "there was no such thing as a permanent chrono" while refusing to acknowledge Plaintiff's documented medical necessity. (*Id*. at 4). Defendant informed Plaintiff that "due to state medical costs she was ordered to re-evaluate [sic] everyone who requested new orthotics." (*Id*.)

Plaintiff experiences pain twenty-four hours a day. (*Id*.). Notably, Plaintiff "is forced to perform his job assignment which causes him to be on his feet almost all day long, and to lift heavy boxes, without orthopedic shoes and support insoles, which causes [Plaintiff] extremely severe crippling pain." (*Id*.). Despite informing Defendant of his condition, Plaintiff contends

---

[4] The Complaint and record reference orthotics, orthopedic shoes, and therapeutic shoes interchangeably. The Court frequently refers to these medical accommodations as orthotics for the sake of simplicity in this order.

6

that she also refused to issue a light-duty chrono, which could have mitigated his physical distress. (*Id.*). For relief, Plaintiff requests a declaratory judgment; an award of monetary damages, compensatory damages, and punitive damages in an amount determined by the court; the costs of the suit; and any further relief deemed appropriate. (*Id.* at 8).

**B. Undisputed Material Facts**

In support of her MSJ, Defendant submits a Separate Statement of Undisputed Facts ("SSUF"). (Doc. No. 38-1). Each listed fact in Defendant's SSUF cites to sworn declarations, medical records, deposition testimony, or the Complaint. (*See generally* Doc. Nos. 1, 38-2, 38-3, 38-4, 38-5, 38-6, 38-7). In his Objection to Summary Judgment, Plaintiff includes a response to Defendant's SSUF and his own statement of undisputed facts. (Doc. No. 41).

By his Objection to Summary Judgment, Plaintiff contests nearly all of Defendant's material facts listed in her SSUF by making "objections" and providing a brief explanation to support their basis. (Doc. No. 41 at 2–3). Many of these objections are based on: (1) Plaintiff's lack of medical or legal expertise;[5] (2) the assertion that the "medical records relied upon [in Defendant's SSUF] are self-serving documents;" and (3) Plaintiff's statement that "[he] complained of foot and leg pain at all medical visits [with Defendant]." (*Id.*). Nearly all of Plaintiff's objections and undisputed facts lack evidentiary support. (*See id.* at 2–4).

Where Plaintiff's response to Defendant's SSUF or his statement of undisputed facts are based solely on conclusory statements or the Complaint, and lacks detailed facts, while Defendant provides detailed facts or documentary evidence in support, the Court generally does not find Plaintiff's objections or statements of fact sufficient to establish a genuine dispute of material fact. *See Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc); *see also FTC v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving

---

[5] The Court denied Plaintiff's motion to appoint counsel because he failed to satisfy the burden required for such an appointment in a civil matter under the circumstances. (*See* Doc. No. 15). The Court also notes that Plaintiff never moved to appoint a neutral expert, nor does this case warrant such an appointment because this action is not sufficiently complex to require one. *See, e.g.*, *Wilkins v. Barber*, 562 F. Supp. 3d 943, 947 (E.D. Cal. 2021) (denying appointment of a neutral expert witness where the plaintiff's alleged medical deliberate indifference claims included, *inter alia*, the discontinuation of an orthopedic shoe prescription).

7

1 affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine
2 issue of material fact."). Having reviewed the record, the undersigned finds the following facts to
3 be material and undisputed, unless otherwise noted.

- Plaintiff Steven Paul Moore is prisoner confined at the California Substance Abuse Treatment Facility ("SATF"), operated by the California Department of Corrections and Rehabilitation, at the time of the events giving rise to Plaintiff's claim. (Doc. No. 1 at 1).
- Defendant Dr. Ndu (formerly Dr. Akabike) was a physician at SATF at the time of the events giving rise to Plaintiff's claim. (Doc. No. 1 at 3; Doc. No. 38-2 at 1–2, ¶¶ 1, 3).
- On or about July 11, 2018, Plaintiff was seen by specialist Dr. Zorrilla, who recommended he wear orthopedic shoes and insoles. Dr. Hails, Plaintiff's former primary care physician ("PCP"), subsequently issued Plaintiff a medical authorization for orthopedic footwear ("2018 Orthotics Order"). (Doc. No. 1 at 3; Doc. No. 41 at 4).
- Orthotics are devices used to support, align, or improve the function of body parts affected by injury, deformity, or disability. (Doc. No. 38-2 at 2, ¶ 4).
- In his Complaint, Plaintiff alleged that Defendant told him "there was no such thing as a permanent chrono" that would necessitate specific medical equipment being issued. (Doc. No. 1 at 4). But, at his deposition, Plaintiff clarified that Defendant did not actually say permanent chronos do not exist, but rather told Plaintiff he did not need the requested shoes. (Moore Depo. Tr. at 27:24–28:11, Doc. No. 38-7).[6] Thus, the allegation in the Complaint is refuted by Plaintiff's deposition testimony.
- In his Complaint, Plaintiff alleged that Defendant was ordered to reevaluate everyone who requested orthotics due to state cost considerations. (Doc. No. 1 at 4). But, at his deposition, Plaintiff testified that he did not recall Defendant mentioning the reevaluation for medical costs. Plaintiff further noted that he believed everybody was being evaluated regarding their durable medical equipment supplies. (Moore Depo. Tr. 32:20–33:14) thus, the allegation in the Complaint is refuted by Plaintiff's deposition testimony.

---

[6] The Court refers throughout this Order to the complete deposition transcript lodged with the Court pursuant to Local Rule 133(j).

8

1
2
3
- Generally, physicians are assigned based on inmate-patient placements at the facility. Defendant was Plaintiff's PCP from January 17, 2019 to March 10, 2022. (Doc. No. 38-2 at 1, ¶ 1).

4
5
6
- During the first evaluation on January 17, 2019, Defendant observed that Plaintiff had been treated for his right foot, as Plaintiff had a ganglion cyst. Plaintiff's prior treatment included a steroid injection. (Doc. No. 38-2 at 2, ¶ 3; Doc. No. 38-3 at 2–3).

7
8
- A ganglion cyst is a typically benign fluid-filled lump that may cause discomfort. (Doc. No. 38-2 at 2 ¶ 3).

9
10
- Treatment for ganglion cysts may vary from observation to surgical removal (excision). (Doc. No. 38-2 at 2, ¶ 3).

11
12
13
- During the January 17, 2019 evaluation, upon inspecting Plaintiff's foot, Defendant determined that no further action was medically necessary, as Plaintiff stated he had been pain-free since the injection. (Doc. No. 38-2 at 2, ¶ 3; Doc. No. 38-3 at 2–3).

14
15
- During the initial January 17, 2019 evaluation, Plaintiff did not voice any further complaints. (Doc. No. 38-2, ¶ 3; Doc. No. 38-3 at 2–3).

16
17
18
19
- On February 14, 2019 Defendant evaluated Plaintiff again. Plaintiff requested a referral for orthotics for his right foot. Defendant examined Plaintiff's foot and did not observe any evidence of pain or deformity. Plaintiff denied having ankle pain or deformity. (Doc. No. 38-2 at 2, ¶ 4; Doc No. 38-3 at 5–6).

20
21
22
- The referrals Plaintiff sought, whether for medical equipment like orthotics or orthopedic shoes or for a specialist consultation, required a determination of medical necessity by the PCP. (Doc. No. 38-2 at 2–3, ¶ 5).

23
24
- In Defendant's professional medical opinion, no medical necessity existed for the referrals or treatment Plaintiff had requested in this case. (Doc. No. 38-2 at 2–3, ¶ 5).

25
26
27
- At Plaintiff's deposition, he recalled Defendant requesting to see his foot and determining at that time that Plaintiff did not require orthotics or orthopedic shoes. (Moore Depo. Tr. at 24:19–25:5).

28
- Defendant continued to see and treat Plaintiff throughout 2019 and 2020 for various issues

including concerns about hypertension, follow-ups related to medication, Plaintiff's concerns regarding lumps on his shoulders, and COVID-19.  During these visits, Plaintiff voiced no further complaints about his foot.  (Doc. No. 38-2 at 3, ¶7; Doc. No. 38-3 at 8–13).

- Plaintiff's medical records indicate that he went to the Triage and Treatment Area ("TTA") on October 10, 2019, and was seen by Dr. Bass and Dr. Scharffenberg for concerns regarding his right foot and to request a podiatrist who could perform aspiration and injection treatment. Dr. Bass and Dr. Scharffenberg discussed the matter with Plaintiff and deferred any procedures related to Plaintiff's foot. (Doc. No. 38-4 at 2, ¶ 3; Doc. No. 38-5 at 2).

- The TTA functions as an urgent care clinic at the facility, where patients can receive treatment and undergo procedures and evaluations.  (Doc. No. 38-2 at 4, ¶ 8).

- At the TTA on October 10, 2019, Plaintiff wore his personal shoes and told Dr. Bass and Dr. Scharffenberg that he was satisfied with them.  (Doc. No. 38-4 at 2, ¶ 3; Doc. No. 38-5 at 2).

- Defendant saw Plaintiff on July 15, 2021, for treatment of the cyst on his right foot, at which time Plaintiff requested excision of the cyst.  Defendant referred Plaintiff to the procedure clinic at the TTA for evaluation of his foot and ordered an x-ray to determine the medical necessity of excision.  (Doc. No. 38-2 at 4, ¶ 8; Doc. No. 38-3 at 15–16).

- During the July 15, 2021 consultation, Plaintiff's medical charts indicated that he was experiencing intermittent hypertension, for which he refused to take blood pressure medication.  (Doc. No. 38-2 at 4, ¶ 8; Doc. No. 38-3 at 15–16).

- Defendant saw Plaintiff again on October 13, 2021, at which time Plaintiff continued to refuse blood pressure medication and denied any other issues.  Plaintiff stated that he did not go to the procedure clinic for treatment of his cyst.  (Doc. No. 38-2 at 4, ¶ 9; Doc. No. 38-3 at 18–19).

- Plaintiff's medical records indicate that on January 20, 2022 he saw another medical provider, Physician Assistant Mbadugha.  Plaintiff informed the provider that he had

10

bilateral arch pain in his foot and had been experiencing it for five years. (Doc. No. 38-2 at 4, ¶ 10; Doc. No. 38-3 at 21–22).

- Plaintiff had not informed Defendant of his foot pain in the years prior. Defendant was unaware of this pain until observing the progress note by another physician on January 20, 2022. (Doc. No. 38-2 at 4, ¶ 10)

- Defendant saw Plaintiff for the last time on March 10, 2022. Because Plaintiff refused new x-rays of his foot, Defendant reviewed the x-ray taken during Plaintiff's podiatry visit in May 2018. In Defendant's medical opinion, the x-ray was unremarkable. Nonetheless, Defendant ordered therapeutic shoes for Plaintiff based on his complaints of bilateral foot pain. (Doc. No. 38-2 at 4–5, ¶ 11; Doc. No. 38-3 at 24–25).

**C. Eighth Amendment Medical Deliberate Indifference**

The Court first must consider whether Defendant, as the moving party, has met her initial burden of showing *prima facie* entitlement to summary judgment on the issue of Plaintiff's medical deliberate indifference claim. *Celotex Corp.*, 477 U.S at 323. The *prima facie* elements of medical deliberate indifference are (1) a "serious medical need[,] [where] failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" and (2) the defendant's "response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (internal quotation marks and citation omitted). The second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (internal citations omitted).

    **1. Serious Medical Need**

Defendant argues that Plaintiff did not have a serious medical need because he never raised any concerns about pain during his visits with Defendant. (Doc. No. 38 at 10). Defendant further argues that "[a]t least as it relates to [Plaintiff's] ganglion cyst, [he] did not have a serious medical need." (*Id*. at 11 (citing *Walker v. Aranas*, 2012 WL 3230561 (D. Nev. June 20, 2012), and then citing *Solvey v. Zepp*, 2023 WL 5917993 (E.D. Cal. Sept. 11, 2023))). However, Plaintiff's Complaint asserts that his pain did not stem solely from a cyst. Rather, Plaintiff

11

alleges that he "suffers from severe crippling foot pain, toe pain, ganglionic cysts, onychomycosis, onychocryptosis, paronychia, and edema." (Doc. No. 1 at 4).

On January 17, 2019, during their first visit, when Plaintiff requested a referral for orthotics, Defendant was aware that Plaintiff had received a steroid injection on July 2, 2018 for treatment of his right foot. (Doc. No. 38-3 at 2). Additionally, Defendant's progress notes from January 17, 2019 and February 14, 2019 indicate that Plaintiff had "mild talonavicular joint arthritis." (Doc. No. 38-3 at 2–3, 5–6). Although Plaintiff did not report to Defendant any degree of discomfort or pain on those days, the record reflects that he had ongoing issues affecting his right foot. *See Washington v. Brown*, 2009 WL 160311, at *14 (E.D. Cal. Jan. 21, 2009) (undisputed that "chronic arthritis constitutes a serious medical need"), *report and recommendation adopted*, 2009 WL 532615 (E.D. Cal. Mar. 3, 2009); *see also Hollis v. Lee*, 2007 WL 963319, at *7 (N.D. Cal. Mar. 30, 2007) (finding triable issue of fact as to whether the plaintiff's foot pain constituted a serious medical need when the plaintiff's doctor previously prescribed orthotics), *aff'd sub nom. Hollis v. Barrie*, 321 F. App'x 677 (9th Cir. 2009); *Lopez v. Scribner*, 2007 WL 184831, at *9 (E.D. Cal. Jan. 23, 2007) (finding triable issue of fact as to whether the plaintiff's foot condition constituted a serious medical need where the plaintiff had been prescribed orthotics dating back to 1993), *report and recommendation adopted*, 2007 WL 781432 (E.D. Cal. Mar. 13, 2007). The Court thus assumes, for purposes of this MSJ, whether Plaintiff had a serious medical need during the relevant time, even if it was a chronic or semi-chronic condition rather than an issue related solely to Plaintiff's ganglionic cysts, is a question of fact.

### 2. Deliberate Indifference

Turning to the second prong, the Court examines whether Defendant acted with deliberate indifference to Plaintiff's serious medical needs by denying him (1) orthotics or orthopedic shoes and (2) a light-duty work chrono. The Court first examines the orthotics-related issues.

Plaintiff attributes liability to Defendant due her failure to order new orthotics on February 14, 2019, as previously authorized by Dr. Zorrilla and Dr. Hails on or around July 18, 2018 ("2018 Orthotics Order"). (Doc. No. 1 at 3–4; Doc. No. 41 at 4). Raised for the first time in his

1  Objection to Summary Judgment, Plaintiff argues that because he was unable to receive new
2  orthotics, he sought medical attention in July 2022 for his torn menisci in both of his knees and
3  underwent left knee surgery in July 2024.  (*See* Doc. No. 41 at 4; *see also* Moore Depo. Tr. at
4  18:25–19:19).  After reviewing Plaintiff's Complaint, Objection to Summary Judgment, and
5  deposition, Plaintiff's medical deliberate indifference claim can be distilled into two core
6  contentions: Defendant acted with deliberate indifference because (1) she denied Plaintiff
7  orthotics despite being aware of his constant pain, and (2) she disregarded the prior 2018
8  Orthotics Order.

9  Defendant argues that she exercised her medical judgment in treating Plaintiff,
10  determining that no further intervention was necessary based on her personal observations and
11  Plaintiff's own statements regarding his pain levels.  (Doc. No. 38 at 12).  Despite Plaintiff's
12  preference for orthotics, Defendant concluded that they were not medically required during the
13  relevant period.  (*Id*.).  While her assessment may have differed from Plaintiff's previous primary
14  care provider, she maintains that her determination remained medically acceptable given the
15  information available to her at the time.  (*Id*.).  For the following reasons, the Court agrees with
16  Defendant.

17  As to Plaintiff's first core contention, the Court finds that Defendant was not deliberately
18  indifferent to Plaintiff's serious medical condition because the undisputed facts and evidence in
19  the record reflect that Plaintiff did not disclose to Defendant that he was in pain until March 10,
20  2022, at which time she ordered him new orthotics.  (*See* Doc. No. 38-3 at 24–25).  During his
21  deposition, Plaintiff testified that he told Defendant his feet were in pain "every time [he was] in
22  front of her."  (Moore Depo. Tr. at 13:5–17).  However, in sharp contrast to his testimony, the
23  record indicates that Plaintiff did not inform Defendant that he suffered any foot pain prior to
24  March 10, 2022,[7] the date on which Defendant ordered Plaintiff new orthotics.  (*See* Doc. No. 38-
25  3 at 2–3 ("got steroid injection to right foot and has been pain free," "He has no complaints."); 5–
26

---

27  [7] The dates Defendant evaluated Plaintiff prior to March 10, 2022 include January 17, 2019, February 14,
    2019, July 16, 20219, January 8, 2020, March 19, 2020, July 6, 2020, December 24, 2020, July 15, 2021,
28  and October 13, 2021.  (*See* Doc. No. 38-3 at 2–3, 5–6, 8–13, 15–16, 18–19).

13

6 ("denies ankle pain or deformity," "has been pain free," "He has no complaint."); 8–13 ("no joint pain or swelling," "states he is doing well and no complaint"); 15–16 ("ganglion cyst of right foot," "referred patient to procedure clinic for evaluation"); 18–19 ("no joint pain or swelling," "patient said he has not been to procedure clinic for ganglion cyst right foot," "follow up on procedure clinic referral"); 24–25 ("bilateral foot pain," "ordered therapeutic shoes"). Additionally, on October 10, 2019, Plaintiff was seen by Dr. Bass and Dr. Scharffenberger at his Triage and Treatment Area ("TTA") appointment regarding the ganglion cyst on his right foot. (Doc. No. 38-5 at 2). At this visit, the parties engaged in an "extended discussion" regarding Plaintiff's right foot and ganglion cyst history. (*Id.*). The progress note from that date shows that Plaintiff never indicated he was in pain but instead actually expressed satisfaction with his personal shoes. (*Id.*) (Stating Plaintiff "is wearing his personal shoes and says he is satisfied with them). Dr. Bass and Dr. Scharffenberger concluded that they would defer any procedure concerning his foot at that time. (*Id.*).

Indeed, the undisputed evidence demonstrates that it was not until January 20, 2022 that Plaintiff first complained of foot pain to any medical provider. (*See* Doc. No. 38-3 at 21–22 ("reports history of bilateral arch pain x5years")). Specifically, Plaintiff informed Physician Assistant Mbadugha of pain while walking and toe cramps at night during that visit. (*Id.*). On March 10, 2022, Plaintiff first informed Defendant of his bilateral foot pain. (Doc. No. 38-3 at 24–25). Defendant reviewed his X-ray from May 2018, noting that Plaintiff refused to undergo an X-ray in August 2021, and found it unremarkable. (*Id.* at 24). Nonetheless, Defendant ordered Plaintiff therapeutic shoes that day based on his self-report of pain. (*Id.* at 25).

To the extent that Plaintiff asserts that Defendant intentionally denied or delayed an order for new orthotics, Plaintiff fails to provide evidence sufficient to raise a genuine dispute of material fact supporting an Eighth Amendment violation. Plaintiff's Complaint asserts that Defendant was ordered to reevaluate everyone who requested orthotics due to cost considerations for the state. (Doc. No. 1 at 4). However, at his deposition, Plaintiff stated that he did not recall Defendant mentioning the reevaluation for medical costs. (Moore Depo. Tr. 32:20–33:14). Rather, Plaintiff now claimed that Defendant's motivation for intentionally depriving Plaintiff of

his orthotics was racially motivated. (*Id*. at 38:9–39:3). Plaintiff describes Defendant as "cold and disconnected," that their interactions were "always negative" and that she was "[n]ever helpful, never understanding, and [that she] always [ ] brush[ed] [him] off." (*Id*. at 12:14–13:1, 37:17–22). As an "older Caucasian" male, Plaintiff believes that Defendant treated him this way because of his race. (*Id*. at 38:5–23).

Even assuming arguendo that racial tension existed between Plaintiff and Defendant, Plaintiff's deliberate indifference claim fails because, as explained *supra*, the record supports that as soon as Plaintiff reported that he was experiencing foot pain to Defendant on March 10, 2022, she ordered him new orthotics. Dr. Bass and Dr. Scharffenberger also deferred making further treatment recommendations regarding Plaintiff's foot condition during this same time. Without more, Plaintiff fails to provide factual support disputing that Defendant was unaware of any substantial serious risk of harm during the relevant period. *See Sandoval*, 985 F.3d at 668 ("a prison official who *should* have been aware of a medically related risk to an inmate, but in fact was not, has not violated the Eighth Amendment." (emphasis in original)). *See Shapley*, 766 F.2d at 407 (a delay in treatment, without more, is insufficient to state a deliberate indifference claim).

Plaintiff's newly raised argument that the delay in ordering his new orthotics eventually led to the tearing of his menisci fails for the same reasons. During his deposition, Plaintiff stated that his torn menisci occurred at some point "during the four-year timeframe." (Moore Depo. Tr. at 19:20–20:8). He further testified that he never brought up his knee pain with Defendant and that his knee-related pain and subsequent treatment occurred <u>after</u> he had received his orthotics and was under the care of his new PCP, Dr. Galvez. (*Id*. at 23:3–24:4). Moreover, Plaintiff admitted that Defendant "didn't have anything to do with [his] knees. [He] didn't even know they were torn." (*Id*. at 23:3–7). Plaintiff fails to put forth evidence showing that Defendant, or even Plaintiff himself, was aware of any issues related to his knees during Defendant's treatment of Plaintiff. *See Sandoval*, 985 F.3d at 668; *see* also *Shapley*, 766 F.2d at 407.

As to Plaintiff's second core contention, the Court finds that Defendant was not deliberately indifferent to Plaintiff's serious medical condition because the undisputed facts reflect that her treatment was medically acceptable under the circumstances when conducting her

1 own independent evaluation of Plaintiff rather than following the prior 2018 Orthotics Order.

2 Plaintiff testified that Defendant "blatant[ly] disregard" the 2018 Orthotics Order as instructed in his permanent chrono[8] located in his medical file. (Moore Depo. Tr. at 27:18–28:11). Plaintiff took issue with Defendant for conducting an independent evaluation, rather than just replacing his worn-out orthotics based on the 2018 Orthotics Order. During his visit with Defendant, Plaintiff testified that he "wonder[ed] why she wanted to see [his] foot because [he] was there asking her. . . [for] another pair of shoes" [ ] [as] permitted by [his] DME." (*Id*. at 24:19–25:2). Defendant then "looked at [his foot] with [his] sock off and determined right then and there that [he] didn't need any [new orthotics]." (*Id*. at 25:3–5). Plaintiff's own testimony supports that he was merely unsatisfied with Defendant's independent evaluation, which determined that Plaintiff did not meet the criteria for a new orthotics referral. *See Toguchi*, 391 F.3d at 1058 ("a mere difference of medical opinion is insufficient . . . to establish deliberate indifference" (cleaned up)). Defendant asserts that the 2018 Orthotics Order "is an undisputed fact for which [he] [has] documentation to support it." (Doc. No. 41 at 2). However, Plaintiff failed to provide any documentation to support its existence other than his own self-reported claims. Even assuming the existence of the 2018 Orthotics Order, Plaintiff fails to provide any evidence to support that a prior medical treatment cannot be rescinded or changed. *See, e.g., Washington v. Rouch*, 2018 WL 3770203, at *7 (E.D. Cal. Aug. 7, 2018) ("The undisputed evidence is that even accommodations designated as 'permanent' are subject to review and possible modification or rescission."), *aff"d*, 771 F. App'x 832 (9th Cir. 2019).

Nonetheless, the pivotal question of this case is whether Defendant's "chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to the prisoner's health." *See Toguchi*, 391 F.3d at 1058 (cleaned up). Here, Plaintiff fails to put forth any evidence raising an issue of material fact regarding Defendant's denial of new orthotics and whether it was medically unacceptable under the circumstances. Rather, the undisputed facts support the opposite conclusion. Notably, during

---

[8] Plaintiff refers to his permanent chrono, permanent durable medical equipment, permanent disability medical equipment, and DME interchangeably throughout his deposition.

their separate evaluation, Dr. Bass and Dr. Scharffenberger noted that Plaintiff was satisfied with his personal shoes and concluded that they would defer any further treatment concerning his foot at the time. This evaluation, which apparently occurred without Defendant's input, along with various other medical documentation in the record, allows the Court to draw a reasonable inference that Defendant's denial of orthotics did not rise to the level of an Eighth Amendment violation during the relevant period. Therefore, the Court finds no evidence to support a triable issue as to whether Defendant was deliberately indifferent to Plaintiff's medical needs when she did not order reorder orthotics for Plaintiff. *See Washington*, 2018 WL 3770203, at *8 (granting summary judgment in favor of the defendants who rescinded and denied the plaintiff's permanent chrono for orthopedic shoes).

Finally, the Court examines whether Defendant acted with deliberate indifference to Plaintiff's serious medical needs by denying a light-duty work chrono. The Court notes that neither party addressed this issue in their moving papers. (*See generally* Doc. Nos. 38, 41, 42). Plaintiff's Complaint asserts that he "is forced to perform his job assignment which causes him to be on his feet almost all day long, and to lift heavy boxes, without orthopedic shoes and support insoles, which causes [him] extremely severe crippling pain." (Doc. No. 1 at 4). Despite informing Defendant of his condition, Plaintiff contends that she refused to issue a light-duty chrono, which could have mitigated his pain. (*Id.*). In Plaintiff's deposition, he stated that his request for a light-duty chrono was denied but was unable to recall any specifics regarding the denial. (Moore Depo. Tr. at 36:14–37:6). Here, the record contains no request for a light-duty chrono. Instead, the record reveals that Plaintiff requested "orthotics for ankle support" because "he works in the kitchen and picks up heavy objects." (*See* Progress Note dated January 17, 2019, Doc. NO. 38-3 at 6). Upon examining Plaintiff, Defendant noted "Right ankle and foot are not tender nor swollen, ROM is normal. He kas normal arches, no deformity, normal gait." (*Id.*). Thus, Defendant opined that "Patient does not meet criteria for orthotic referral." (*Id.*). As noted, there is no evidence in the record that Plaintiff requested a light-duty chrono but instead requested orthotics. Consequently, three is no evidence that Defendant knew of and disregarded an excessive risk to Plaintiff's health and safety during the relevant time, as explained *supra*. *See*

17

1  *Toguchi*, 391 F.3d at 1058.  Because Plaintiff fails to make a sufficient showing to establish the
2  existence of the essential element regarding the second prong of a medical deliberate indifference
3  claim under the Eighth Amendment, summary judgment should be granted for Defendant.  *See*
4  *Celotex*, 477 U.S. at 323.

**D. Qualified Immunity**

In the alternative, Defendant asserts that she is entitled to qualified immunity in this case because no official in her position would believe her conduct in denying orthotics for a ganglion cyst violated Plaintiff's constitutional rights.  (Doc. No. 38 at 13).  In support, Defendant cites to *Harden v. High Desert State Prison*, No. 2:15-cv-01168, 2018 U.C. Dist. LEXIS 111809, at *10 (D. Nev. July 5, 2018), where the court noted that qualified immunity would be appropriate in that case because there exists no clearly established right to elective surgical procedures for benign cysts.  (*Id.*).

A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful.  *Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).  This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the constitutional right at issue."  *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)).  "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful."  *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017).  The plaintiff bears the burden

1  of establishing that the right alleged was clearly established. *Moran v. Washington*, 47 F.3d 839,
2  844 (9th Cir. 1998).
3    As discussed *supra*, the Court finds the undisputed facts show that Defendant was not
4  deliberately indifferent to Plaintiff's serious medical needs. Thus, because the Court finds no
5  constitutional violation, the Court need not address the second prong.
6    Accordingly, it is **RECOMMENDED**:
7    1. The district court **GRANT** Defendant's Motion for Summary Judgment (Doc. No. 38).
8    2. Judgment be entered in Defendant's favor and the case closed.

9                                **NOTICE TO PARTIES**

10    These Findings and Recommendations will be submitted to the United States District
11  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days
12  after being served with a copy of these Findings and Recommendations, a party may file written
13  objections with the Court. *Id*.; Local Rule 304(b). The document should be captioned,
14  "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**
15  **(15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party
16  wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its
17  CM/ECF document and page number, when possible, or otherwise reference the exhibit with
18  specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by
19  the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §
20  636(b)(l)(C). A party's failure to file any objections within the specified time may result in the
21  waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

23  Dated:   April 23, 2025                         /s/ Helena M. Barch-Kuchta
                                                    HELENA M. BARCH-KUCHTA
24                                                  UNITED STATES MAGISTRATE JUDGE